UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AL-MAHDI FARAD MOHAMMED,　　　　　　　Case No. 1:16-cv-333
　　　Plaintiff,　　　　　　　　　　　　　　　Black, J.
　　　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.

vs.

VERST GROUP LOGISTICS, INC.,　　　　　　**REPORT AND**
　　　Defendant.　　　　　　　　　　　　　　**RECOMMENDATION**

Plaintiff Al-Mahdi Farad Mohammed, proceeding pro se, was granted leave to file *in forma pauperis* and filed the original complaint in this action on February 29, 2016. (Docs. 2, 3). Plaintiff filed an amended complaint on April 27, 2016. (Doc. 11). Plaintiff, a resident of Kentucky, brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and Ohio Rev. Code § 4112.02 against defendant Verst Group Logistics, Inc. (Verst), an Ohio corporation, alleging (1) employment discrimination on the basis of his race, and (2) retaliation. The matter is before the Court on defendant's motion for summary judgment (Doc. 26), which is unopposed.

## I. Background

Plaintiff makes the following allegations in the amended complaint: Plaintiff is an African-American male who during the relevant time period was a temporary employee dispatched by "StaffMark" to Verst as a driver for Verst. (Doc. 11, ¶ 5). In approximately April of 2015, plaintiff filed race and retaliation charges against Verst. (*Id.*, ¶ 6; Exh. A). On or about April 15, 2015, while he was making a delivery for Verst at its customer Proximo's facility, plaintiff and a Proximo office employee and security guard had a dispute over where plaintiff could park his truck. (*Id.*, ¶¶ 7-13). Proximo allowed a Caucasion driver from a different

trucking company to park his truck in the same parking spot that Proximo had denied to plaintiff. (*Id.*, ¶ 16). After plaintiff moved his truck and returned to Proximo's property to unload, the Proximo security guard and plaintiff had a confrontation over plaintiff smoking while in his truck on Proximo's property, and the security guard hit plaintiff on the side of the head and used a racial epithet. (*Id.*, ¶¶ 15-18). Plaintiff reported the incident to Staffmark and Verst, and two days later Verst advised Staffmark that plaintiff was to return his truck keys and was not to return to Verst or ever "step foot on a Verst Group or Zenith Logistics property."[1] (*Id.*, ¶¶ 19-22). The Vice-President of Risk Management at Verst, Michael Hart, was aware that plaintiff had a pending case against Zenith, which plaintiff describes as Verst's "sister company," because Hart holds the same position at Zenith. (*Id.*, ¶¶ 23, 25).

On April 20, 2015, plaintiff filed race discrimination and retaliation charges against Verst, and the EEOC issued a Notice of Right to Sue on December 7, 2015. (*Id.*, ¶ 24; Doc. 3 at 5).

## II. Defendant's motion for summary judgment

Defendant moves for summary judgment as a matter of law under Fed. R. Civ. P. 56. (Doc. 26). Verst alleges it is entitled to summary judgment because there is no genuine issue of material fact that (1) plaintiff was an employee of Staffmark, not Verst; (2) neither Verst nor Staffmark subjected plaintiff to an adverse employment decision; (3) plaintiff has not submitted evidence to show that defendant was aware of plaintiff's protected activity and that there was a causal connection between plaintiff's protected activity and a materially adverse action as required to establish a prima facie case of retaliation; and (4) assuming plaintiff has come forward with sufficient evidence to establish a prima facie case of discrimination or retaliation,

---

[1] Zenith Logistics, Inc. (Zenith) is a dedicated logistics company that manages warehouses exclusively for The Kroger Company in Ohio, Kentucky and Indiana. (Doc. 26, Exh. 2, James Stadtmiller Decl., ¶ 7).

2

Verst has set forth a legitimate, nondiscriminatory and nonretaliatory reason for its decision to request that plaintiff be reassigned.

**1. Summary judgment standard**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1982). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89).

3

The movant bears the burden of demonstrating that no material facts are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's failure to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. *Mongan v. Lykins,* No. 1:09-cv-00626, 2010 WL 2900409, at *3 (S.D. Ohio 2010) (citing *Guarino*, 980 F.2d at 410; *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991)). The Court's obligation when evaluating an unopposed motion for summary judgment is as follows:

> [T]he Court must review carefully those portions of the submitted evidence designated by the moving party. The Court will not, however, *sua sponte* comb the record from [the non-moving party's] perspective. Instead, the Court may reasonably rely on [the movant's] unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted. If such evidence supports a conclusion that there is no genuine issue of material fact, the Court should determine that [the movants] have carried their burden. . . .

*Mongan,* 2010 WL 2900409 (internal quotations and citations omitted).

**2. Undisputed facts**

Verst is an Ohio corporation that provides public warehousing, transportation, packaging and other services to consumer goods and manufacturing companies in Greater Cincinnati. (Doc. 26, Exh. 2, James Stadtmiller Declaration, ¶ 6). Staffmark is an employment agency that recruits and supplies drivers to Verst. (*Id.*, Exh. 3, Michael Hart Declaration, ¶ 8). At all relevant times, plaintiff was a temporary employee of Staffmark and was not an employee of Verst. (*Id.*, Hart Decl., ¶ 9; Doc. 18-2, Defendant's Request for Admission Nos. 1. 2).[2]

---

[2] Defendant filed a motion for an order to deem its Requests for Admission admitted on August 5, 2016. (Doc. 18). The Court granted the motion as unopposed on September 8, 2016, after plaintiff failed to file a response within the time allotted under the Local Rules. (Doc. 21). Plaintiff filed an untimely response in opposition to the motion on October 6, 2016, without offering any justification for failing to respond in a timely manner. (Doc. 22). The belated response does not impact the Court's Order (Doc. 21), which deems the Requests for Admission set forth in the motion admitted.

4

Plaintiff's claims of race discrimination and retaliation are based on events that plaintiff alleges occurred on or about April 15, 2015, while plaintiff was making a delivery at Proximo Distillers (Proximo) in Lawrenceburg, Indiana. (Doc. 18-2, Defendant's Request for Admission Nos. 3, 8). Melissa Hayes, an employee in Proximo's Health, Safety and Security (HSS) Department, spoke with plaintiff inside Proximo's Security Guard Office. (Doc. 26, Exh. 4, M. Hayes Decl., ¶¶ 3-4). Ms. Hayes directed plaintiff where to park his truck while he waited for a dock to become available to unload the truck. (*Id.*, ¶ 5). Plaintiff refused to move his truck and became irate, so that she had to call for assistance. (*Id.*, ¶¶ 6-7). Another employee in the HSS Department, David Hayes (Hayes), received Ms. Hayes' call and responded by informing plaintiff that he had to move his truck to the designated area. (*Id.*, ¶ 7; Exh. 5, D. Hayes Decl., ¶¶ 5, 7). Plaintiff said that "white" people were allowed to park there and he would not move his truck. (*Id.*, ¶ 8). Hayes called Verst to inform the company about the situation, at which point plaintiff walked back to get into his trailer. (*Id.*, ¶ 9).

The supervisor of the HSS Department, Joe Kraus, also received a call from Ms. Hayes about a non-complying driver. (*Id.*, Exh. 6, Kraus Decl., ¶¶ 3, 5). When Kraus arrived at the scene, plaintiff parked his truck in the middle of Proximo's employee parking lot, blocking the movement of other vehicles at the facility. (*Id.*, ¶ 7). Kraus asked Becky Jackson, another employee in the HSS department who happened to be with Kraus when he received the call from Ms. Hayes, to walk with him to plaintiff's truck. (*Id.*, ¶¶ 6, 8). As Kraus approached plaintiff, he was sitting in his cab and talking on the phone with his free hand up so as to signal Kraus not to approach him. (*Id.*, ¶ 9). Kraus tapped on the truck to get plaintiff's attention, then stepped back. (*Id.*, ¶ 10). Hayes saw Kraus approach the tractor and observed plaintiff ignore him. (*Id.*,

5

Exh. 5, ¶ 10). A few minutes later, plaintiff pulled his truck out and moved it to the appropriate parking location and shortly thereafter drove off of Proximo's premises. (*Id.*, ¶ 11; Exh. 6, ¶ 11).

Plaintiff eventually returned to Proximo to have his trailer unloaded. (*Id.*, Exh. 5, ¶ 12; Exh. 6, ¶ 12). Both Hayes and Kraus observed plaintiff smoking a cigarette in the cab of his truck. (*Id.*, Exh. 5, ¶ 18; Exh. 6, ¶ 13). Cigarette smoking anywhere on Proximo's premises is prohibited. (*Id.*, Exh. 5, ¶ 19; Exh. 6, ¶ 13). Hayes informed Kraus that he would talk to plaintiff about smoking. (*Id.*, Exh. 6, ¶ 14). Hayes walked over and stepped up onto the cab to try to get plaintiff's attention to tell him to put out the cigarette, but plaintiff ignored Hayes. (*Id.*, Exh. 5, ¶¶ 20, 21). Hayes tapped on plaintiff's earphones to get his attention without pulling off or yanking the earphones, at which point plaintiff threatened to call his brother who was a Cincinnati Police Officer. (*Id.*, ¶¶ 22, 23). Hayes responded that he was going to call the local police, which plaintiff said was not necessary. (*Id.*, ¶ 23).

After plaintiff left Proximo's facility, he called the security office at Proximo and "threaten[ed] to sue," stated that he "would have [Hayes'] job," accused Hayes of race discrimination, and asserted that his brother was going to arrest Hayes. (*Id.*, ¶ 25). Plaintiff also called Kraus and accused Proximo of racism. (*Id.*, Exh. 6, ¶ 15).

On April 15, 2015, Thomas Morris, the Manager of Fleet Resources at Verst, called Michael Hart, the Vice-President of Risk Management at Verst, and informed him of an incident that had occurred at Proximo involving plaintiff, who was a temporary employee of Staffmark. (*Id.*, Exh. 3, Hart Decl., ¶¶ 5, 6). Hart conducted an investigation and viewed security video footage of plaintiff's interactions with Proximo employees from that day. (*Id.*, ¶¶ 10, 12, 13). Hart learned from his investigation and the video footage that when delivering a shipment on behalf of Verst to Proximo's facility, plaintiff had refused to follow Proximo's instructions

6

regarding where to park his truck while waiting for it to be unloaded; he was smoking on Proximo's premises, which was strictly forbidden; and he was "rude, disrespectful and confrontational to Proximo employees." (*Id.*, ¶¶ 12, 13). Hart was also informed that plaintiff had threatened Proximo employees and falsely accused them of race discrimination. (*Id.*, ¶ 14). Proximo informed Verst that plaintiff was no longer permitted on their premises. (*Id.*, ¶ 15). After learning this information and completing his investigation, Verst informed Staffmark to no longer assign plaintiff as a driver for Verst. (*Id.*, ¶ 16).

A few weeks before April 20, 2015, plaintiff had called James Stadtmiller, who at all relevant times has been employed as Chief Financial Officer at Verst, to inform him that plaintiff had filed a claim against Zenith with the EEOC. (Doc. 26, Exh. 2, Stadtmiller Decl. ¶¶ 2, 4). The EEOC charge is dated July 18, 2013, and alleges retaliation and discrimination based on race and religion. (Doc. 26, Exh. 8). Plaintiff alleged in the charge that he had filed an EEOC charge against Complete Personnel Logistics (CPL), and the company informed him that his assignment at Zenith ended in February 2013 because he was too argumentative; however, plaintiff alleged this was a pretext for discrimination and retaliation for complaining about his treatment. (*Id.*). Plaintiff alleged that he was subjected to disparate treatment, Zenith created a hostile work environment, and Zenith discriminated and retaliated against him by informing CPL that it would not accept him for other assignments. (*Id.*). Plaintiff also alleged that he believed Zenith and CPL were joint employers while he was on assignment at Zenith because they both exercised control of his day-to-day work assignments and jointly enforced Zenith's decision not to continue his assignment. (*Id.*). The EEOC issued a Notice of Right to Sue on March 25, 2015. (*Id.*, Exh. 9).

Stadtmiller was not aware prior to plaintiff's call that plaintiff had filed claims against Zenith. (*Id.*, Exh. 2, ¶ 4). Verst and Zenith are separate corporations with separate employees and equipment, although they have some common shareholders and/or directors. (*Id.*, ¶¶ 5, 9). According to Stadtmiller, plaintiff's claims against Zenith did not affect his assignment at Verst. (*Id.*, ¶ 10).

Plaintiff filed a civil action against Zenith in the Southern District of Ohio in June 2015 alleging he was removed from Zenith because the CPL employees he worked with did not want to work with him on account of his Muslim religion. *Al-Mahdi Mohammed v. Zenith Logistics, Inc.*, No. 1:15-cv-00413 (S.D. Ohio 2015). The Court granted summary judgment in favor of Zenith in the case on December 21, 2016. (*Id.*, ECF Doc. 32).

### 3. Defendant is entitled to summary judgment.

#### A. *Anti-discrimination/anti-retaliation statutes*

Title VII makes its unlawful "for an employer -- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Ohio Rev. Code § 4112.02(A) makes it an unlawful discriminatory practice "for any employer, because of the . . . race . . . of any person, . . . to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." To prove a prima facie case of discrimination, plaintiff must show that he was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than

similarly situated nonminority employees. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).[3]

Title VII's anti-retaliation provision makes its unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a)(1). Ohio Rev. Code § 4112.02(I) makes it unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." To prove a prima facie case of retaliation, plaintiff must demonstrate that: (1) he engaged in a protected activity under the anti-discrimination laws; (2) defendant was aware of the activity; (3) plaintiff was subject to an adverse employment action; and (4) there was a causal nexus between plaintiff's protected activity and the adverse employment action. *Blackshear v. Interstate Brands Corp.*, 495 F. App'x 613, 619 (6th Cir. 2012).

### B. Employment status

Verst argues as a threshold matter that the undisputed evidence demonstrates it was not plaintiff's employer and therefore it cannot be held liable on plaintiff's claims. "[E]mployment status is a mixed question of law and fact." *Sanford v. Main St. Baptist Church Manor, Inc.*, 449

---

[3] To analyze claims under Ohio Rev. Code Ch. 4112, Ohio courts have adopted the same framework used by federal courts for analyzing claims under Title VII. *Burt v. Maple Knoll Communities, Inc.*, No. 1:15-cv-225, 2016 WL 3906233, at *5, n. 1 (S.D. Ohio July 19, 2016) (citing *Hampel v. Food Ingredients Specialties, Inc.*, 729 N.E.2d 726, 731 (Ohio 2000)). *See also Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007) (citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 421 N.E.2d 128 (1981) ("federal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. Chapter 4112")).

9

F. App'x 488, 491 (6th Cir. 2011) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n. 1 (6th Cir. 1992)). If the material facts on this issue are not in dispute, the court can resolve the question as a matter of law. *Id.* (citing *Lilley*, 958 F.2d at 750 n. 1).

The term "employer" under federal law means "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person. . . ." 42 U.S.C. § 2000e(b). Under Ohio law, "employer" means "any person employing four or more persons within the state . . . and any person acting directly or indirectly in the interest of an employer." Ohio Rev. Code § 4112.01(A)(2). Although the evidence may show that an entity is not the plaintiff's formal employer, this does not end the court's inquiry concerning whether the entity may be held liable as an employer for discrimination and retaliation. "Entities that do not otherwise meet the definition of employer (either because they do not formally employ the plaintiff or do not meet the numerosity requirement) may still face liability through the single-employer or joint-employer doctrines." *Sanford*, 449 F. App'x at 491 (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997)). Through application of these doctrines, an entity that is not the plaintiff's formal employer can be treated as if it were for purposes of Title VII and Ohio law. *Id.* See also *Burt*, 2016 WL 3906233, at *6 (applying joint-employer doctrine in retaliation case brought under Title VII and Ohio Rev. Code Ch. 4112); *Sampson v. Sisters of Mercy of Willard, Ohio*, No. 3:12-cv-00824, 2015 WL 3953053, at *4 (N.D. Ohio June 29, 2015) (Ohio courts have engaged in similar analysis to that used by federal court when considering if an entity that did not directly employ the plaintiff can be considered an employer) (citing Ohio cases). The single-employer doctrine applies when "two nominally independent entities are so interrelated" that all of the employees of one are attributed to the other. *Sanford*, 449 F. App'x at 491 (citing *Swallows*, 128 F.3d at 993, n. 4). The joint-

10

employer doctrine applies when a business "maintains sufficient control over some or all of the formal employees of another business as to qualify as those employees' employer [although] the two businesses are in fact independent." *Id.* (citing *Swallows*, 128 F.3d at 993 n. 4).

Thus, in order to hold Verst liable for discrimination and retaliation under Title VII or Ohio law, plaintiff must show that Verst was his "employer" within the meaning of the statutes. The unrebutted evidence submitted by Verst shows that there is no genuine issue of material fact on the question of plaintiff's employment status. Although plaintiff alleges that Verst took an adverse employment action against him by informing Staffmark that he was not to be assigned to either Verst or Zenith in the future, it is undisputed that Staffmark, not Verst, was the entity that formally employed plaintiff. (Doc. 26, Exh. 3, Hart Decl., ¶ 9; Doc. 18-2, Defendant's Requests for Admission Nos. 1, 2). Plaintiff has not introduced any evidence to show that Staffmark and Verst were interrelated, or that Staffmark maintained a sufficient degree of control over Verst employees, so as to permit an inference that either the single employer or joint-employer doctrine applies. Nor is there any evidence in the record that indicates Verst and Proximo are interrelated to any extent. Plaintiff alleges in the amended complaint that Zenith and Verst are "sister compan[ies]" and that Hart allegedly occupies the same position in both companies. (Doc. 11, ¶¶ 23, 25). However, evidence produced by Verst establishes that the two companies are separate corporations with separate employees and equipment. (Doc. 26, Exh. 2, ¶ 9). Plaintiff has not attempted to refute this evidence. Thus, because there is no evidence to rebut Verst's proof that it was not plaintiff's employer at the time of the alleged discriminatory and retaliatory actions, Verst is entitled to summary judgment on plaintiff's discrimination and retaliation claims.

### C. Adverse employment action

Assuming, *arguendo*, that plaintiff had produced sufficient evidence to satisfy the threshold "employer" requirement, defendant is nonetheless entitled to summary judgment because there is insufficient evidence to show the "adverse employment action" prong of a prima facie case of discrimination or retaliation is met. An adverse employment action is defined as a "materially adverse change in the terms or conditions" of employment. *Burt*, 2016 WL 3906233, at *8 (citing *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment *with significantly different responsibilities*, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added)).

Plaintiff alleges in the amended complaint that two days after the incident at Proximo, Verst informed Staffmark that he was not to return to Verst or Zenith. (Doc. 11, ¶ 22). Plaintiff has not introduced any evidence that fleshes out this allegation and shows that Verst's action caused a "materially adverse change in the terms or conditions" of his employment at Staffmark. *See Burt*, 2016 WL 3906233, at *8. Plaintiff provides no indication or evidence that he experienced a significant change in his job responsibilities or a significant change in benefits as a result of Verst's action. Absent any evidence that creates a genuine issue of material fact as to whether plaintiff was adversely impacted by Verst's action, Verst is entitled to summary judgment on his discrimination and retaliation claims.

### D. Knowledge/causal connection elements of retaliation claim

Defendant alleges it is entitled to summary judgment on plaintiff's retaliation claims because plaintiff has not provided evidence to create a genuine issue of material fact on the

knowledge and causal connection elements. Plaintiff has not submitted any evidence showing that defendant was aware of his protected activity. Nor has plaintiff produced any evidence that permits a reasonable inference of a causal connection between his protected activity and Verst's decision to demand that plaintiff not be assigned as a driver for Verst in the future. Plaintiff alleges in the amended complaint that Hart had investigated an incident involving plaintiff and another driver at Zenith in December 2012 to which the police were called; therefore, Hart knew of a pending case plaintiff had with Zenith. (Doc. 11, ¶ 25). However, plaintiff has not produced any evidence on summary judgment to show a causal connection between the 2012 incident plaintiff references and Verst's 2015 decision. The record includes an EEOC charge dated July 18, 2013 that plaintiff filed in connection with the 2012 incident. (*See* Doc. 26, Exh. 8). However, there is no evidence in the record to show that any employee at Verst was aware of the charge. Assuming Verst knew plaintiff had filed the charge against Zenith in July 2013, the two-year lapse between the date of the charge against Zenith and the 2015 employment action is too great to permit an inference of a causal connection. *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."). Because plaintiff has not produced any evidence to link the prior EEOC charge against Zenith with the 2015 action by Verst, he cannot establish a prima facie case of retaliation.

*E. Legitimate reason for the employment action*

Finally, assuming plaintiff had come forward with sufficient evidence to establish a prima facie case of discrimination or retaliation, the burden of production would be on defendant to articulate a legitimate, nondiscriminatory and nonretaliatory reason for its adverse employment decision. *Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (citing *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009)). Plaintiff would then have the burden to demonstrate that the proffered reason was not the true reason for the employment decision but was a pretext for unlawful discrimination or retaliation. *Id.* (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391-92 (6th Cir. 2008)). Defendant has articulated a legitimate, nondiscriminatory and nonretaliatory reason for its adverse employment decision, which was plaintiff's noncompliant, rude, and confrontational behavior at Proximo. Plaintiff has not submitted evidence to call into question whether the reason offered by defendant is a pretext for discrimination or retaliation. Plaintiff has therefore failed to carry his burden to produce evidence that shows there is a genuine issue of material fact on plaintiff's discrimination and retaliation claims. Verst is entitled to summary judgment on plaintiff's claims as a matter of law.

**IT IS THEREFORE RECOMMENDED THAT:**

(1) Defendant Verst's motion for summary judgment as a matter of law (Doc. 26) be **GRANTED** pursuant to Fed. R. Civ. P. 56.

(2) The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to

proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.,* 105 F.3d 274, 277 (6th Cir. 1997).

Date: 4/21/17

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AL-MAHDI FARAD MOHAMMED,
Plaintiff,

Case No. 1:16-cv-333
Black, J.
Litkovitz, M.J.

vs.

VERST GROUP LOGISTICS, INC.,
Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).